IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:24-cr-172-2 |
| v. | ) ) ) | GOVERNMENT'S SENTENCING MEMORANDUM |
| TIMOTHY JASON HELLMERS, | ) ) | |
| Defendant. | ) ) | |

Defendant Timothy Jason Hellmers is a felon who built a pipe bomb with his co-defendant brother and denotated in underneath a truck on a residential street. The truck belonged to Defendant's former roommate, who he claimed took property from him. The Court should sentence him to six years (72 months) in prison

**I.   PROCEDURAL BACKGROUND**

Defendant pleaded guilty to possession of an unregistered destructive device, in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871. Presentence Investigation Report, ECF No. 98, ¶ 1 (hereinafter "PSR"). Pursuant to the parties' plea agreement, the government agrees to dismiss Counts 1 and 2 at the time of sentencing. *Id.* ¶ 3.

There is one outstanding objection to the PSR, namely whether a bystander is a victim. The government offers the following exhibit:

- Exhibit 1: Victim Impact Statement (Filed under seal) (2 pages)

## II.     SENTENCING CALCULATION

### A.     Statutory Maximum and Minimum Sentence

Based on Defendant's plea of guilty to Count Four, Defendant is subject to a maximum sentence of ten years in prison, a fine of up to $250,000, and up to three years of supervised release. A $100 special assessment per count also applies. PSR ¶¶ 130, 133, 137, 138.

### B.     Disputed Guideline Issue

Defendant disputes whether a bystander, K.T., is a victim of the offense. The government offers K.T.'s victim impact statement as Exhibit 1, filed under seal. To the extent necessary, the government will proffer that K.T. did not incur medical expenses and that if he had, those costs would have been covered. *See* PSR ¶ 42a. No restitution requests or victim impact statements have been received from B.G., the owner of the truck. *See* PSR ¶ 42.

The Court may order restitution in this case, including as a condition of supervised release. *See* 18 U.S.C. § 3663(a)(1)(A). The Crime Victim Rights Act defines a victim as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A); *accord* 18 U.S.C. § 3663(a)(2) (Victim and Witness Protection Act); 18 U.S.C. § 3663A(a)(2) (Mandatory Victims Restitution Act).[1] Reimbursable victim losses include "the value of the [lost

---

[1] In this case, the government does not contend that restitution is mandatory or that this possession of an unregistered destructive device is a crime of violence. *See* 18 U.S.C. § 16; *cf. United States v. Serafin*, 562 F.3d 1105, (10th Cir. 2009) (concluding possession of a short-barreled rifle (an unregistered firearm) was insufficient to qualify as a "crime of violence" for a conviction under 18 U.S.C.

or destroyed] property," "necessary medical and related professional services," and "income lost." 18 U.S.C. § 3363(b). The Court resolves restitution disputes by a preponderance of the evidence. 18 U.S.C. § 3664(e).

K.T. is unquestionably a victim of the offense. Defendant's possession of the destructive device on the day he denoted it on Hartford Avenue in Des Moines directly caused K.T.'s injuries and K.T.'s injuries were foreseeable. *See, e.g.*, *United States v. Moore*, 178 F.3d 994, (8th Cir. 1999) (holding a bank customer was a victim of a bank robbery because he was "proximately" harmed by the offense where the defendant pointed a gun at a teller standing two feet away).

K.T. submitted a victim impact statement quantifying his restitution request as expenses he incurred for a firearm and firearms training. K.T. discusses the emotional distress associated with the offenses. K.T. also cited the psychological effects of the offense and the impacts for his daily wellbeing, education, and existing health conditions. Should K.T. submit costs which are reimbursable, the Court should impose an order of restitution for that amount.

---

§ 924(c)); *United States v. Hull*, 456 F.3d 133, 137–42 (3d Cir. 2006) (concluding possession of a pipe bomb was insufficient to qualify as a "crime of violence" for purposes of a conviction under 18 U.S.C. § 842(p), which prohibits the teaching, demonstrating, and distributing information regarding the use of a pipe bomb with the intent that the teaching or information be used for a "Federal crime of violence").

### C. Sentencing Guidelines Calculation

The parties agree the PSR correctly calculates the advisory guidelines range in this case as follows:

| | |
|---|---|
| USSG §2K2.1(a)(4)(B) (base) | 20 |
| USSG §2K2.1(b)(3)(B) (destructive device) | +2 |
| USSG §2K2.1(b)(6)(B) (connection with felony) | +4 |
| USSG §3E1.1 (acceptance of responsibility) | –3 |
| Total Offense Level | 23 |
| Criminal History Category | IV (8) |
| Guideline Sentencing Range | 70–87 months |

## III. SENTENCING FACTORS & GOVERNMENT'S RECOMMENDATION

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   B. to afford adequate deterrence to criminal conduct;
   C. to protect the public from further crimes of the defendant; and
   D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;
6. the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a).

The government recommends a 72-month guideline sentence of imprisonment, followed by a three-year term of supervised release.

As part of the instant offense, Defendant and his co-defendant, brother built a pipe bomb. They then denotated the pipe bomb they built underneath a truck on a residential street around 5:50 am. *Id.* ¶ 12. K.T. was driving and saw Defendant and his brother place the bomb underneath the truck. *Id.* ¶ 12. K.T. heard a loud bomb, saw a bright flash, and felt a "shockwave." *Id.* The effects from that day continue to cause K.T. substantial and real impacts. *Id.* ¶ 42a; Gov't's Ex. 1. A neighbor's security camera captured a distance view of the explosion, as pictured below. PSR ¶ 11. Other neighbors heard the explosion. *Id.* ¶¶ 13, 14.



The initial responding officers believed the truck was the victim of a hit and run. PSR ¶ 15. Around 10:50am, the truck owner, B.G., called dispatch again after he found metal pieces near his truck. *Id.* ¶ 18. He reported "having issues" with Timothy, who used to live with B.G. *Id.* ¶ 20. B.G. showed officers messages from a phone he had that used to belong to Timothy, which contained explicit messages about the plans to place a bomb underneath B.G.'s truck, including messages from Timothy saying "We prepping the bomb to hit [B.G.']s truck rn I'm blowing is shit to smitherines," "Testing boom tube's we got this 3/4 lbs and a half lbs one we bout to test it now," and "The blue truck bout to go byebye." *Id.* ¶ 20.

Defendant and his brother admitted to smoking methamphetamine the day they detonated the pipe bomb. PSR ¶¶ 27, 31. This was more than a meth-induced decision. Defendant, his brother, and co-defendant Jake Steiniger spent multiple days of deliberate planning gathering materials, including powder and fuse, and constructing the pipe bomb at Steiniger's residence. *Id.* ¶¶ 33–36. Defendants improvised pipe bomb posed a significant danger. The black powder and fuse were of an unknown age and uncertain quality. *See id.* ¶ 35. The explosive material and fuse were placed inside a galvanized steel pipe which contained the explosive material and threw steel pieces at high velocity when it detonated. *See id.* ¶¶ 16, 40; *see also* Dana Bors, Josh Cummins, & John Goodpaster, *The Anatomy of a Pipe Bomb Explosion: Measuring the Mass and Velocity Distributions of Container Fragments*, 59 J. Forensic Sci. 42 (Jan. 2014) (concluding pipe bombs made with steel pipes produce high velocity fragments of large relative mass when detonated).

Messages between Defendant and his brother after the explosion included a message from Daniel that said "idk if it was good enough; I know it caught his attention and he should know we aint playing now." PSR ¶ 20(f). Defendant then asked Daniel if there were plates on the car and pleaded to delete their conversation. *Id.* Once in jail, Timothy bragged "me and Danny are the pipe bomb brothers." *Id.* ¶ 38. Defendant said the no contact order between B.G. and him wouldn't "do him no good. It's not going to stop me from kicking in his door and beating the fucking brakes off of him." PSR ¶ 39. These statements are concerning considering the instant offense and demonstrate Defendant's lack of remorse.

Defendant's criminal history reveals two troubling convictions for domestic violence. In 2011, Defendant was arrested after he shoved his girlfriend into the wall to prevent her from leaving. PSR ¶ 62. In 2022, Defendant was arrested for domestic abuse assault after he grabbed his girlfriend and pushed her into a wall. *Id.* ¶ 68. Defendant violated the no contact order three times, used methamphetamine and marijuana, and failed two substance abuse treatment programs. *Id.* Defendant spent approximately eight months in prison after his probation was revoked in August 2024. *Id.* While in custody, Defendant received a violation for fighting with another inmate and refusing to stop fighting once a correctional officer intervened. *Id.* ¶ 9.

In 2018, Defendant became a convicted felon after he deposited a forged check. PSR ¶ 66. He repeatedly violated the conditions of, first, his deferred judgment, and then, his probation. *Id.* ¶ 66, 115–16.

7

Defendant has used methamphetamine since age 12. PSR ¶ 100. In 2024, he also used marijuana, heroin, and cocaine. *Id.* ¶¶ 99, 102, 104. Defendant's drug use played a significant role in him losing custody of three children. *Id.* ¶¶ 87, 88. His girlfriend was pregnant at the time he committed this offense. *Id.* ¶ 86(a). Defendant has no consistent employment history. *Id.* ¶¶ 114–21.

Defendant recruited a friend and his brother to settle a dispute with his former roommate by building a pipe bomb. Defendant and his brother then denotated that bomb with complete disregard for anyone else or the consequences. A significant punishment is warranted. The government believes a six-year, Guideline sentence would be sufficient but not greater than necessary to accomplish the goals of sentencing.

WHEREFORE, the government requests the Court consider this sentencing memorandum in determining the final sentence of Defendant.

Respectfully submitted,

Richard D. Westphal
United States Attorney

By: */s/ MacKenzie Tubbs*
MacKenzie Benson Tubbs
Assistant United States Attorney
Neal Smith Federal Building
210 Walnut Street, Suite 455
Des Moines, IA 50309
Tel: (515) 473-9300
Fax: (515) 473-9292
Email: mackenzie.benson.tubbs@usdoj.gov

CERTIFICATE OF SERVICE
I hereby certify that on May 30, 2025, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:
____U.S. Mail ____ Fax ____Hand Delivery
__X__ECF/Electronic filing ____Other means
ASSISTANT UNITED STATES ATTORNEY
By: */s/ MacKenzie Tubbs*